FILED
2026 Sep-02 PM 04:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

BRANDON LOTT and MARIA RODRIGUEZ, individually and on behalf of all others similarly situated,

*Plaintiffs,*

v.

AESTO, LLC d/b/a AESTO HEALTH,

*Defendant.*

**Case No. ________________**

**CLASS ACTION**

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiffs Brandon Lott and Maria Rodriguez, individually and on behalf of a class of similarly situated persons, bring this Class Action Complaint and allege the following against defendant Aesto, LLC d/b/a Aesto Health ("Aesto" or "Defendant"), based upon personal knowledge with respect to Plaintiffs and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters.

## NATURE OF THE ACTION

1. Plaintiffs bring this class action against Aesto for its failure to properly secure Plaintiffs' and Class Members' personally identifiable information ("PII") and personal health information ("PHI"). The PII and PHI may have included victims' names, Social Security numbers, dates of birth, and medical information.

2. Aesto failed to comply with industry standards to protect information systems that contain PII and PHI. Plaintiffs seek, among other things, orders requiring Aesto to fully and accurately disclose the nature of the information that has been compromised and to adopt sufficient security practices and safeguards to prevent incidents like the disclosure (the "Data Breach") in

the future.

3. An unauthorized party gained access to Aesto's data for 16 days in December 2025.[1]

4. Aesto discovered the breach and did not complete its forensic investigation of the cybersecurity incident until May 26, 2026.[2]

5. Aesto later explained that it "experienced a network security incident that impacted a limited portion of Aesto's Amazon Web Services infrastructure."

6. Aesto delayed providing information to multiple healthcare providers that their patients' data had been compromised until June 26, 2026.[3]

7. One of those healthcare providers was Village Practice Management Company, LLC ("Village Medical"), which disclosed that over 25,000 individuals were affected by the Data Breach in Texas alone.[4]

8. On or around July 31, 2026, Aesto disclosed to the U.S. Department of Health and Human Services Office for Civil Rights that over 9.5 million individuals were affected by the Data Breach.[5]

9. As a healthcare data management provider, Aesto knowingly obtained sensitive PII and PHI and had a resulting duty to securely maintain that information in confidence. Plaintiffs

---

[1] Aesto Health, Notice of Data Security Incident, https://www.aestohealth.com/notice-of-data-security-incident-12-18-25/ (last accessed Aug. 26, 2026).

[2] *Id.*

[3] *Id.*

[4] Attorney General of Texas, Data Security Breach Reports, https://oag.my.site.com/datasecuritybreachreport/apex/DataSecurityReportsPage (last accessed Aug. 26, 2026).

[5] HIPAA Cases Currently Under Investigation, https://ocrportal.hhs.gov/ocr/breach/breach_report_hip.jsf (last accessed Aug. 26, 2026).

and Class Members would not have provided their PII and PHI to Aesto if they had known that Aesto would not ensure that it used adequate security measures.

10. Plaintiffs seek to remedy these harms individually and on behalf of all other similarly situated individuals whose PII and/or PHI were exposed in the Data Breach. Plaintiffs seek remedies including compensation for time spent responding to the Data Breach and other types of harm, free credit monitoring and identity theft insurance, and injunctive relief including substantial improvements to Aesto's data security policies and practices.

## PARTIES

11. Plaintiff Brandon Lott is a resident of Richmond, Texas. For over three years, Mr. Lott was a patient at VillageMedical, which represented to government regulators that Aesto was responsible for the disclosure of its patients' PII and PHI.

12. Plaintiff Maria Rodriguez is a resident of Houston, Texas. For approximately one year, Ms. Rodriguez has been a patient of VillageMedical, which represented to government regulators that Aesto was responsible for the disclosure of its patients' PII and PHI.

13. Defendant Aesto, LLC is a Delaware corporation, with its principal place of business in Birmingham, Alabama.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class is a citizen of a state other than Alabama, there are more than 100 class members, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interests and costs.

15. This Court has personal jurisdiction over Aesto because Aesto maintains its principal place of business in Alabama and conducts substantial business in this District through

its principal place of business; engaged in the conduct at issue herein from and within this District; and otherwise has substantial contacts with this District.

16. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Aesto resides in this District, and this District and Division are where a substantial part of the acts, omissions, and events giving rise to Plaintiffs' claims occurred.

## FACTUAL ALLEGATIONS

### The Data Breach

17. Aesto claims that its area of expertise is in taking on the "technical burdens," of "data extraction complexities, the tedious mapping processes, and the anxiety of maintaining secure access to critical health care and financial data" "so your staff can stay focused [on] operations rather than wrestling with data conversion challenges."[6]

18. Due to the nature of the services it provides, Aesto acquires and electronically stores PII and PHI. Aesto was therefore required to ensure that PII and PHI were not disclosed or disseminated to unauthorized third parties without Plaintiffs' and Class Members' express written consent.

19. On June 24, 2026, Aesto posted on a "Notice of Data Security Incident" on its website.

20. According to the notice, Aesto concluded a forensic investigation and manual document review on May 26, 2026 that "confirmed that between on or about December 2, 2026 and December 18, 2025, certain protected health information belonging to patients of various Covered Entity clients stored within Aesto's network may have been accessed and/or acquired by

[6] Aesto Health, Discovery How We Help, https://www.aestohealth.com/how-we-help/ (last accessed Aug. 26, 2026).

an unauthorized actor."[7] Aesto's letter did not state when or how it learned about the Data Breach.

21. Two days later, on June 26, 2026, Aesto notified its "Covered Entity clients whose patient information was included in the files potentially accessed or acquired by the unauthorized party."[8] Aesto sent the notice to 25 covered entities.[9]

22. One of those covered entities was Village Medical, who sent out a notice to its customers. Village Medical also reported the breach to the Attorney General of Texas, which was published on the Attorney General's website August 4, 2026.[10]

23. Aesto's disclosures are otherwise deficient. They do not include basic details concerning the Data Breach, including, but not limited to, why PII and PHI were stored on systems without adequate security, the deficiencies in the security systems that permitted unauthorized access, whether the data was encrypted or otherwise protected, and what Aesto knows about the degree to which the data has been disseminated.

24. Aesto has not disclosed nearly all the details of the Data Breach and its investigation. Without such disclosure, questions remain as to the full extent of the Data Breach, the actual data accessed and compromised, and what measures, if any, Aesto has taken to secure the PII and PHI still in its possession. Plaintiffs seek to determine the scope of the Data Breach and the information involved, obtain relief that redresses the harm to Plaintiffs' and Class

---

[7] Aesto Health, Notice of Data Security Incident, https://www.aestohealth.com/notice-of-data-security-incident-12-18-25/ (last accessed Aug. 26, 2026).

[8] *Id.*

[9] Aesto Health, Notice of Data Security Incident: Covered Entities Identified, https://www.healthcaredive.com/news/villagemd-online-tracking-technology-lawsuit-meta-pixel/713016/ (Aug. 26, 2026).

[10] Attorney General of Texas, Data Security Breach Reports, https://oag.my.site.com/datasecuritybreachreport/apex/DataSecurityReportsPage (last accessed Aug. 26, 2026).

Members' interests, and ensure that Aesto has proper measures in place to prevent similar incidents from occurring in the future.

**Aesto's Security Representations**

25. Aesto has a Health Privacy Notice on its website. On its Health Privacy Notice, Aesto states that it may "process Protected Health Information (PHI) as part of the services it provides to its customers."[11]

26. Aesto further asserts that "PHI is processed solely on behalf of customers (Covered Entities) in accordance with applicable HIPAA requirements and Business Associate Agreements (BAAs)."[12]

27. Aesto claims that it "is committed to the highest standards of data security and compliance in healthcare" and "meets the security and compliance standards that healthcare organizations require."[13]

28. As part of building trust with its entities that trust Aesto with their patients' data, Aesto has a "Aesto Security and Compliance" message in a box at the bottom of all of its webpages. Within the box, Aesto states that it is HITRUST certified and has SOC 2 Type 2 attestation.[14]

29. Aesto also claims that it protects personal information through "secure data encryption, access controls and authentication measures, and regular security audits and compliance reviews."

---

[11] Aesto Health, Aesto Health Privacy Notice, https://www.aestohealth.com/privacy-policy/ (last accessed Aug. 26, 2026).

[12] *Id.*

[13] *Id.*

[14] *Id.*

**The Healthcare Sector is a Primary Target for Data Breaches**

30. Aesto was on notice that companies in the healthcare industry are susceptible targets for data breaches.

31. Aesto was also on notice that the Federal Bureau of Investigation has been concerned about data security in the healthcare industry. On April 8, 2014, the FBI's Cyber Division issued a Private Industry Notification to companies within the healthcare sector, stating that "the health care industry is not technically prepared to combat against cyber criminals' basic cyber intrusion tactics, techniques and procedures (TTPs), much less against more advanced persistent threats (APTs)" and pointed out that "[t]he biggest vulnerability was the perception of IT healthcare professionals' beliefs that their current perimeter defenses and compliance strategies were working when clearly the data states otherwise." The same warning specifically noted that "[t]he FBI has observed malicious actors targeting healthcare-related systems, perhaps for the purpose of obtaining Protected Health Information (PHI) and/or PII."[15]

32. The number of reported North American data breaches increased by over 50 percent in 2021, from 1,080 in 2020[16], to 1,638 in 2021.[17] As a recent report reflects, "[h]ealthcare has increasingly become a target of run-of-the-mill hacking attacks and the more impactful

---

[15] Health Care Systems and Medical Devices at Risk for Increased Cyber Intrusions for Financial Gain (Apr. 8, 2014), FBI Cyber Division Private Industry Notification (available at https://info.publicintelligence.net/FBI-HealthCareCyberIntrusions.pdf) (last accessed Aug. 26, 2026).

[16] *See* Verizon 2021 Data Breach Investigations Report, at 97, https://www.verizon.com/ business/resources/reports/2021-data-breach-investigations-report.pdf (last accessed Aug. 26, 2026).

[17] *See* Verizon 2022 Data Breach Investigations Report, at 83 (available at https://www.verizon.com/ business/resources/reports/2022/dbir/2022-data-breach-investigations-report-dbir.pdf) (last accessed Aug. 26, 2026).

ransomware campaigns."[18]

33. At the end of 2018, the healthcare sector ranked second in the number of data breaches among measured sectors, and had the highest rate of exposure for each breach.[19] Indeed, when compromised, healthcare related data is among the most sensitive and personally consequential. A report focusing on healthcare breaches found that the "average total cost to resolve an identity theft-related incident . . . came to about $20,000," and that the victims were often forced to pay out-of-pocket costs for healthcare they did not receive in order to restore coverage.[20] Almost 50 percent of the victims lost their healthcare coverage as a result of the incident, while nearly 30 percent said their insurance premiums went up after the event. Forty percent of the customers were never able to resolve their identity theft at all. Data breaches and identity theft have a crippling effect on individuals and detrimentally impact the economy.[21]

34. Healthcare-related breaches have persisted because criminals see electronic patient data as a valuable asset. According to the 2019 HIMSS Cybersecurity Survey, 82 percent of participating hospital information security leaders reported having a significant security incident in the previous 12 months, with a majority of these known incidents being caused by "bad actors" such as cybercriminals.[22] "Hospitals have emerged as a primary target because they sit on a gold

---

[18] *Id.* at 62.

[19] *2018 End-of-Year Data Breach Report*, Identity Theft Resource Center (available at https://www.idtheftcenter.org/2018-data-breaches) (last accessed Aug. 26, 2026).

[20] Elinor Mills, *Study: Medical identity theft is costly for victims*, CNET (March 3, 2010) (available at https://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims/) (last accessed Aug. 26, 2026).

[21] *Id.*

[22] *2019 HIMSS Cybersecurity Survey* (available at https://www.himss.org/sites/hde/files/d7/u132196/2019_HIMSS_Cybersecurity_Survey_Final_Report. pdf) (last accessed Aug. 26, 2026).

mine of sensitive personally identifiable information for thousands of patients at any given time. From social security and insurance policies, to next of kin and credit cards, no other organization, including credit bureaus, have so much monetizable information stored in their data centers."[23]

35. The American Medical Association ("AMA") has also warned healthcare companies about the importance of protecting their patients' confidential information:

> Cybersecurity is not just a technical issue; it's a patient safety issue. AMA research has revealed that 83% of physicians work in a practice that has experienced some kind of cyberattack. Unfortunately, practices are learning that cyberattacks not only threaten the privacy and security of patients' health and financial information, but also patient access to care.[24]

36. As major healthcare services providers, Aesto knew, or should have known, the importance of safeguarding Plaintiffs' and Class Members' PII and PHI entrusted to them and of the foreseeable consequences if that data was disclosed. This includes the significant costs that would be imposed on Plaintiffs and Class Members by virtue of a breach. Aesto failed, however, to take adequate cybersecurity measures to prevent the Data Breach.

**Aesto Stores Plaintiffs' and Class Members' PII and PHI**

37. Aesto obtained and stored a massive amount of PII and PHI. Aesto is in the business of extracting, migrating, archiving, and analyzing healthcare data.[25] Central to its business and that of its clients' is the maintaining of patient PII and PHI. As a condition of engaging in health care

---

[23] Inside Digital Health, *How to Safeguard Hospital Data from Email Spoofing Attacks*, Apr. 4, 2019 (available at https://www.idigitalhealth.com/news/how-to-safeguard-hospital-data-from-email-spoofing-attacks) (last accessed Aug. 26, 2026).

[24] Andis Robeznieks, *Cybersecurity: Ransomware attacks shut down clinics, hospitals*, Am. Med. Ass'n (Oct. 4, 2019) (available at https://www.ama-assn.org/practice-management/sustainability/cybersecurity-ransomware-attacks-shut-down-clinics-hospitals) (last visited Aug. 26, 2026).

[25] Aesto Health, Data Capture, https://www.aestohealth.com/datacapture/ (last visited Aug. 26, 2026).

services, Aesto and its affiliates require that patients entrust them with highly confidential PII and PHI.

38. By obtaining, collecting, using, and deriving a benefit from Plaintiffs' and Class Members' PII and PHI, Aesto assumed legal and equitable duties and knew or should have known that they were responsible for protecting Plaintiffs' and Class Members' PII and PHI from disclosure.

39. Plaintiffs and Class Members have taken reasonable steps to maintain the confidentiality of their PII and PHI, and relied on Aesto to keep this information confidential and securely maintained, and to make only authorized disclosures of this information.

**PII and PHI are Valuable and Subject to Unauthorized Disclosure**

40. Aesto was aware that the PII and PHI collected is highly sensitive and of significant value to those who would use it for wrongful purposes.

41. PII and PHI are valuable commodities to identity thieves. As the FTC recognizes, identity thieves can use this information to commit an array of crimes including identify theft, and medical and financial fraud.[26] Indeed, a robust illegal market exists in which criminals openly post stolen PII and PHI on multiple underground websites, commonly referred to as the "dark web." PHI can sell for as much as $363 on the dark web, according to the Infosec Institute.[27]

42. PHI is particularly valuable because criminals can use it to target victims with frauds and swindles that take advantage of the victim's medical conditions or victim settlements. It can be used to create fake insurance claims, allowing for the purchase and resale of medical

---

[26] Federal Trade Commission, What To Know About Identity Theft (available at https://consumer.ftc.gov/articles/what-know-about-identity-theft) (last accessed Aug. 26, 2026).

[27] Center for Internet Security, *Data Breaches: In the Healthcare Sector* (available at https://www.cisecurity.org/blog/data-breaches-in-the-healthcare-sector/) (last accessed Aug. 26, 2026).

equipment, or gain access to prescriptions for illegal use or resale.

43. Medical identity theft can result in inaccuracies in medical records and costly false claims. It can also have life-threatening consequences. If a victim's PHI is mixed with other records, it can lead to misdiagnosis or mistreatment. "Medical identity theft is a growing and dangerous crime that leaves its victims with little to no recourse for recovery," reported Pam Dixon, executive director of World Privacy Forum. "Victims often experience financial repercussions and worse yet, they frequently discover erroneous information has been added to their personal medical files due to the thief's activities."[28]

44. The ramifications of Aesto's failure to keep Plaintiffs' and Class Members' PII and PHI secure are long-lasting and severe. Once PII and PHI are stolen, fraudulent use of that information and damage to victims may continue for years. Fraudulent activity might not show up for months or even years thereafter.

45. Further, criminals often trade stolen PII and PHI for years following a breach. Cybercriminals can post stolen PII and PHI on the internet, thereby making such information publicly available.

46. Approximately 21% of victims do not realize their identity has been compromised until more than two years after it has happened.[29] This gives thieves ample time to seek multiple treatments under the victim's name. Forty percent of consumers found out they were a victim of medical identity theft only when they received collection letters from creditors for expenses that

---

[28] Michael Ollove, The Rise of Medical Identity Theft in Healthcare, Kaiser Health News (Feb. 7, 2014) (available at https://khn.org/news/rise-of-indentity-theft/) (last accessed Aug. 26, 2026).

[29] *See* Medical ID Theft Checklist (available at https://www.identityforce.com/blog/medical-id-theft-checklist-2) (last accessed Aug. 26, 2026).

were incurred in their names.[30]

47. Aesto knew, or should have known, the importance of safeguarding PII and PHI entrusted to them and of the foreseeable consequences if their data security systems were breached. This includes the significant costs that would be imposed on Plaintiffs and Class Members because of a breach. Aesto failed, however, to take adequate cybersecurity measures to prevent the Data Breach from occurring.

**The Data Breach Exposed Plaintiffs and Class Members to Identity Theft and Out-of-Pocket Losses**

48. Plaintiffs and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of their rights. They are incurring and will continue to incur such damages in addition to any fraudulent use of their PII and PHI.

49. Despite all the publicly available knowledge of known and foreseeable consequences of the disclosure of PII and PHI, Aesto's policies and practices with respect to maintaining the security of Plaintiffs' and Class Members' PII and PHI were reckless, or at the very least, negligent.

50. In virtually all contexts, the expenditure of time has consistently been recognized as compensable, and for many people, it is the basis on which they are compensated. Plaintiffs and Class Members should be compensated for the time they have expended because of Aesto's misfeasance.

51. Once PII and PHI are stolen, fraudulent use of that information and damage to victims may continue for years. Consumer victims of data breaches are more likely to become

[30] Experian, The Potential Damages and Consequences of Medical Identityy Theft and Healthcare Data Breaches (available at https://www.experian.com/assets/data-breach/white-papers/consequences-medical-id-theft-healthcare.pdf) (last accessed Aug. 26, 2026).

victims of identity fraud.[31]

52. As a result of the wide variety of injuries that can be traced to the Data Breach, Plaintiffs and Class Members have and will continue to suffer financial loss and other actual harm for which they are entitled to damages, including, but not limited to, the following:

a. losing the inherent value of their PII and PHI;

b. identity theft and fraud resulting from the theft of their PII and PHI;

c. costs associated with the detection and prevention of identity theft;

d. costs associated with purchasing credit monitoring, credit freezes, and identity theft protection services;

e. lowered credit scores resulting from credit inquiries following fraudulent activities;

f. costs associated with time spent and the loss of productivity or the enjoyment of one's life from taking time to address and attempt to mitigate and address the actual and future consequences of the Data Breach, including discovering fraudulent charges, cancelling and reissuing cards, purchasing credit monitoring and identity theft protection services, imposing withdrawal and purchase limits on compromised accounts, and the stress, nuisance, and annoyance of dealing with the repercussions of the Data Breach; and

g. the continued imminent injury flowing from potential fraud and identity theft posed by their PII and PHI being in the possession of one or more unauthorized third parties.

[31] 2025 LexisNexis True Cost of Fraud Study, https://risk.lexisnexis.com/insights-resources/research/us-ca-true-cost-of-fraud-study (last visited Aug. 26, 2026)..

**Aesto's Lax Security Violates HIPAA**

53. Aesto had a non-delegable duty to ensure that all PHI collected and stored was secure.

54. Aesto is bound by HIPAA (*see* 45 C.F.R. § 160.102) and, as a result, is required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

55. These rules establish national standards for the protection of patient information, including protected health information, defined as "individually identifiable health information" which either "identifies the individual" or where there is a "reasonable basis to believe the information can be used to identify the individual," that is held or transmitted by a healthcare provider. See 45 C.F.R. § 160.103.

56. HIPAA limits the permissible uses of "protected health information" and prohibits unauthorized disclosures of "protected health information."

57. HIPAA requires that Aesto implement appropriate safeguards for this information.

58. Despite these requirements, Aesto failed to comply with its duties under HIPAA and their own Privacy Practices. In particular, Aesto failed to:

a. maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks;

b. adequately protect Plaintiffs' and Class Members' PHI;

c. ensure the confidentiality and integrity of electronic PHI created, received, maintained, or transmitted, in violation of 45 C.F.R. § 164.306(a)(1);

d. implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights, in violation of 45 C.F.R. § 164.312(a)(1);

e. implement adequate policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 C.F.R. § 164.308(a)(1)(i);

f. implement adequate procedures to review records of information system activity regularly, such as audit logs, access reports, and security incident tracking reports, in violation of 45 C.F.R. § 164.308(a)(1)(ii)(D);

g. protect against reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information, in violation of 45 C.F.R. § 164.306(a)(3);

h. ensure compliance with the electronic PHI security standard rules by their workforce, in violation of 45 C.F.R. § 164.306(a)(4); and/or

i. train all members of their workforce effectively on the policies and procedures with respect to PHI as necessary and appropriate for the members of their workforce to carry out their responsibilities and to maintain security of PHI, in violation of 45 C.F.R. § 164.530(b)

59. Aesto failed to comply with its duties under HIPAA despite being aware of the risks associated with unauthorized access to Plaintiffs' and Class Members' PHI.

**Aesto Violated FTC Guidelines**

60. The Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, prohibited Aesto from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal

Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' PII is an "unfair practice" in violation of the FTC Act. *See, e.g., Fed. Trade Comm'n v. Wyndham Worldwide Corp*., 799 F.3d 236 (3d Cir. 2015).

61. The FTC has promulgated several guides for businesses that reflect the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[32]

62. In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established data security guidelines for businesses.[33] The guidelines reflect that businesses should protect the PII that they keep; properly dispose of PII that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.

63. The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to confidential data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[34]

64. The FTC has brought enforcement actions against businesses for failing to protect customer data adequately and reasonably, treating the failure to employ reasonable and appropriate

[32] Federal Trade Commission, Start With Security: A Guide for Business (available at https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf) (last accessed Aug. 26, 2026).

[33] Federal Trade Commission, Protecting Personal Information: A Guide for Business (available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf) (last accessed Aug. 26, 2026).

[34] FTC, *Start With Security*, *supra*.

measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

65. Aesto failed to properly implement basic data security practices. Aesto's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiffs' and Class Members' PII and PHI constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

66. Aesto was at all times fully aware of its obligation to protect Plaintiffs' and Class Members' PII and PHI because of its position as a healthcare provider. Aesto was also aware of the significant repercussions that would result from its failure to do so.

**Plaintiff Lott's Experience**

67. Plaintiff Brandon Lott has been a patient at Village Medical over the last three years, and has received care in their Richmond, Texas location. Upon information and belief, Aesto obtained Mr. Lott's PII and PHI in the course of conducting its regular business operations.

68. At the time of the Data Breach, Aesto retained Mr. Lott's PII and PHI.

69. Mr. Lott greatly values his privacy and is very careful about sharing his sensitive PII and PHI. Mr. Lott diligently protects his PII and PHI and takes proactive steps to ensure his PII and PHI are kept safe and secure and stores any documents containing PII and PHI in a safe and secure location. He has never knowingly transmitted unencrypted sensitive PII or PHI over the Internet or any other unsecured source.

70. Aesto obtained and continues to maintain Mr. Lott's PII and PHI and has a continuing legal duty and obligation to protect that PII and PHI from unauthorized access and disclosure.

71. The Data Breach has caused Mr. Lott to suffer imminent and impending injury arising from the substantially increased risk of additional future fraud, identity theft, and misuse resulting from his PII and PHI being placed in the hands of criminals.

72. Furthermore, Mr. Lott received a fraudulent medical bill that he did not recognize, and had to contact his insurance company to resolve the matter.

73. As a result of the Data Breach, Mr. Lott is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

74. Mr. Lott has a continuing interest in ensuring that his PII and PHI, which, upon information and belief, remain backed up in Aesto's possession, are protected and safeguarded from future breaches.

**Plaintiff Rodriguez's Experience**

75. Plaintiff Maria Rodriguez has been a patient at Village Medical over the last year. Upon information and belief, Aesto obtained Ms. Rodriguez's PII and PHI in the course of conducting its regular business operations.

76. At the time of the Data Breach, Aesto retained Ms. Rodriguez's PII and PHI.

77. Ms. Rodriguez greatly values her privacy and is very careful about sharing her sensitive PII and PHI. Ms. Rodriguez diligently protects her PII and PHI and takes proactive steps to ensure her PII and PHI are kept safe and secure and stores any documents containing PII and PHI in a safe and secure location. She has never knowingly transmitted unencrypted sensitive PII or PHI over the Internet or any other unsecured source.

78. Aesto obtained and continues to maintain Ms. Rodriguez's PII and PHI and has a continuing legal duty and obligation to protect that PII and PHI from unauthorized access and disclosure.

79. The Data Breach has caused Ms. Rodriguez to suffer imminent and impending injury arising from the substantially increased risk of additional future fraud, identity theft, and misuse resulting from her PII and PHI being placed in the hands of criminals.

80. Ms. Rodriguez has been a victim of tax-related identity theft, and has seen fraudulent transactions, unauthorized charges, and increased scam calls. She has placed fraud alerts on her accounts.

81. As a result of the Data Breach, Ms. Rodriguez is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

82. Ms. Rodriguez has a continuing interest in ensuring that her PII and PHI, which, upon information and belief, remain backed up in Aesto's possession, are protected and safeguarded from future breaches.

**CLASS ACTION ALLEGATIONS**

83. Pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, Plaintiffs seek certification of a Class as defined below:

> All persons in the United States and its territories whose PII and/or PHI was compromised in the Data Breach.

84. Excluded from the Class are Aesto, any entity in which Aesto has a controlling interest, and Aesto's officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class are any judicial officer presiding over this matter, members of their immediate family, and members of their judicial staff.

85. Plaintiffs reserve the right to modify or amend the definition of the proposed Class as additional information becomes available to Plaintiffs.

86. **Numerosity:** The Class Members are so numerous that individual joinder of all Class Members is impracticable. Aesto has reported to government authorities that over 9.5 million

individuals were affected by the Data Breach. All Class Members' names and addresses are available from Aesto's records, and Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods.

87. **Commonality:** There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a. Whether and to what extent Aesto had a duty to protect the PII and PHI of Class Members;

b. Whether Aesto was negligent in collecting and storing Plaintiffs' and Class Members' PII and PHI;

c. Whether Aesto had duties not to disclose the PII and PHI of Class Members to unauthorized third parties;

d. Whether Aesto took reasonable steps and measures to safeguard Plaintiffs' and Class Members' PII and PHI;

e. Whether Aesto failed to adequately safeguard the PII and PHI of Class Members;

f. Whether Aesto failed to implement and maintain reasonable security policies and practices appropriate to the nature and scope of the PII and PHI compromised in the Data Breach;

g. Whether Aesto adequately, promptly, and accurately informed Plaintiffs and Class Members that their PII and PHI had been compromised;

h. Whether Plaintiffs and Class Members are entitled to actual damages, statutory damages, and/or punitive damages because of Aesto's wrongful conduct;

i. Whether Plaintiffs and Class Members are entitled to restitution because of Aesto's

wrongful conduct;

j. Whether Plaintiffs and Class Members are entitled to injunctive relief to redress the imminent and ongoing harm they face because of the Data Breach; and

k. Whether Plaintiffs and Class Members are entitled to identity theft protection for their respective lifetimes.

88. **Typicality:** Plaintiffs' claims are typical of those of other Class Members because Plaintiffs' PII and PHI, like that of every other Class Member, was disclosed by Aesto. Plaintiffs' claims are typical of those of the other Class Members because, *inter alia*, all Class Members were injured through Aesto's common misconduct. Plaintiffs are advancing the same claims and legal theories individually and on behalf of all other Class Members, and there are no defenses that are unique to Plaintiffs. Plaintiffs' claims and Class Members' claims arise from the same operative facts and are based on the same legal theories.

89. **Adequacy:** Plaintiffs are adequate representatives of the Class because Plaintiffs are members of the Class and are committed to pursuing this matter against Aesto to obtain relief for the Class. Plaintiffs have no conflicts of interest with the Class. Plaintiffs' counsel are competent and experienced in litigating class actions, including extensive experience in data breach litigation. Plaintiffs intend to vigorously prosecute this case and will fairly and adequately protect the Class's interests.

90. **Policies Generally Applicable to the Class:** This class action is also appropriate for certification because Aesto has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members, and making final injunctive relief appropriate with respect to the Class as a whole. Aesto's policies challenged herein apply to and affect Class Members

uniformly and Plaintiffs' challenge of these policies hinges on Aesto's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiffs.

91. **Superiority:** Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Aesto. Even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

92. The nature of this action and the nature of laws available to Plaintiffs and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and Class Members for the wrongs alleged because Aesto would necessarily gain an unconscionable advantage in non-class litigation, since Aesto would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiffs were exposed is representative of that experienced by Class Members and will establish the right of each Class Member to recover on the causes of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

93. The litigation of Plaintiffs' claims is manageable. Aesto's uniform conduct, the

consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrate that there would be no significant manageability problems with maintenance of this lawsuit as a class action.

94. Adequate notice can be given to Class Members directly using information maintained in Aesto's records.

95. Unless a class-wide injunction is issued, Aesto may continue to maintain inadequate security with respect to the PII and PHI of Class Members, Aesto may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and Aesto may continue to act unlawfully as set forth in this Complaint.

96. Aesto has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate.

**COUNT I**
**NEGLIGENCE**
**(on behalf of Plaintiffs and the Class)**

97. Plaintiffs re-allege and incorporate by reference herein all the allegations contained in the preceding paragraphs.

98. The risk that unauthorized persons would attempt to gain access to the PII and PHI and misuse it was foreseeable. As Aesto stores vast amounts of PII and PHI, it was inevitable that unauthorized individuals would attempt to access Aesto's databases, whether by malware or otherwise.

99. PII and PHI are highly valuable, and Aesto knew, or should have known, the risk in obtaining, using, handling, and storing Plaintiffs' and Class Members' PII and PHI and the importance of exercising reasonable care to those ends.

100. Aesto owed Plaintiffs and Class Members a duty to use reasonable care to protect and safeguard PII and PHI entrusted to it.

101. Aesto owed a duty of care to Plaintiffs and Class Members to implement and maintain reasonable administrative, technical, and physical safeguards to protect PII and PHI and to prevent unauthorized access, disclosure, or misuse of such PII and PHI.

102. Aesto owed a duty of care to Plaintiffs and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting their PII and PHI in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. More specifically, this duty included, among other things:

a. designing, maintaining, and testing Aesto's security systems to ensure that Plaintiffs' and Class Members' PII and PHI in Aesto's possession was adequately secured and protected;

b. implementing processes that would detect a breach of its security system in a timely manner;

c. timely acting upon warnings and alerts, including those generated by its own security systems, regarding intrusions to its networks; and

d. maintaining data security measures consistent with industry standards.

103. Aesto had a common law duty to prevent foreseeable harm to its patients. This duty existed because Plaintiffs and Class Members were the foreseeable and probable victims of any inadequate security practices.

104. Aesto owed these duties to Plaintiffs and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Aesto knew or should have known would suffer injury-in-fact as a result of Aesto's inadequate security protocols. Aesto

actively sought and obtained Plaintiffs' and Class Members' PII and PHI.

105. It was also foreseeable that Aesto's failure to adequately safeguard their PII and PHI in accordance with industry standards for data security would result in the compromise of that PII and PHI.

106. Aesto acted with wanton and reckless disregard for the security and confidentiality of Plaintiffs' and Class Members' PII and PHI.

107. Aesto breached the duties it owed to Plaintiffs and Class Members described above and thus was negligent. Aesto breached these duties by, among other things, failing to:

a. exercise reasonable care and implement adequate security systems, protocols and practices sufficient to protect Plaintiffs' and Class Members' PII and PHI;

b. detect the breach while it was ongoing;

c. maintain security systems consistent with industry standards; and

d. disclose in a timely fashion that Plaintiffs' and the Class Members' PII and PHI in Aesto's possession had been or was reasonably believed to have been, stolen or compromised.

108. As a direct and traceable result of Aesto's negligence and/or negligent supervision, Plaintiffs and Class Members have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

109. Aesto's breach of its common-law duties to exercise reasonable care and negligence actually and proximately caused Plaintiffs' and Class Members' actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII and PHI by criminals, improper disclosure of their PII and PHI, lost benefit of their bargain, lost value of their PII and PHI, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted

from and were caused by Aesto's negligence. Those injuries-in-fact and damages are ongoing, imminent, immediate, and Plaintiffs and Class Members continue to face them.

110. As a direct and proximate result of Aesto's negligence, Plaintiffs and Class Members have been injured as described herein, and are entitled to damages in an amount to be proven at trial. Plaintiffs' and Class Members' injuries include, but are not limited to, the following:

a. losing the inherent value of their PII and PHI;

b. having their private health information, including diagnoses and medications, exposed to people to whom they did not intend to disclose that information;

c. losing the value of the explicit and implicit promises of data security;

d. identity theft and fraud resulting from the theft of their PII and PHI;

e. costs associated with the detection and prevention of identity theft and unauthorized use of their financial accounts;

f. costs associated with purchasing credit monitoring, credit freezes, and identity theft protection services;

g. Plaintiffs and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

111. Plaintiffs and Class Members are also entitled to injunctive relief compelling Aesto to:

a. strengthen its data security systems and monitoring procedures;

b. submit to future annual audits of those systems and monitoring procedures;

c. provide adequate credit monitoring to all Class Members';

d. compelling Aesto to provide detailed and specific disclosure of what types of PII and PHI have been compromised as a result of the Data Breach.

**COUNT II**
**NEGLIGENCE PER SE**
**(on behalf of Plaintiffs and the Class)**

112. Plaintiffs re-allege and incorporate by reference herein all the allegations contained in the preceding paragraphs.

113. The actions and omissions of Aesto violated established standards governing the handling of PHI under federal law (e.g., HIPAA Security Rule) and relevant state laws and regulations governing medical-record confidentiality and patient privacy. Aesto's failure to safeguard PHI constitutes negligence per se.

114. Pursuant to the Federal Trade Commission Act, 15 U.S.C. § 45, Aesto had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' PII and PHI.

115. Pursuant to HIPAA (42 U.S.C. § 1302d *et seq*.) and the FTC Act, Aesto was required by law to maintain adequate and reasonable data and cybersecurity measures to maintain the security and privacy of Plaintiffs' and Class Members' PHI and PII.

116. Pursuant to HIPAA, Aesto had a duty to render the electronic PHI it maintained unusable, unreadable, or indecipherable to unauthorized individuals, as specified in the HIPAA Security Rule by "the use of an algorithmic process to transform data into a form in which there is a low probability of assigning meaning without use of a confidential process or key." *See* 45 C.F.R. § 164.304.

117. Aesto violated the FTC Act and HIPAA by failing to comply with applicable industry standards. Aesto's conduct was particularly unreasonable given the nature and amount of

PII and PHI it obtained and stored, and the exposure of Plaintiffs' and Class Members' sensitive PII and PHI.

118. Aesto breached its duties by failing to employ industry standard data and cybersecurity measures to ensure their compliance with those laws, including, but not limited to, proper segregation, access controls, password protection, encryption, intrusion detection, secure destruction of unnecessary data, and penetration testing.

119. It was reasonably foreseeable, particularly given the growing number of data breaches of health information, that the failure to reasonably protect and secure Plaintiffs' and Class Members' PII and PHI in compliance with applicable laws would result in an unauthorized third-party gaining access to Aesto's networks, databases, and computers that stored or contained Plaintiffs' and Class Members' PII and PHI.

120. Aesto's violations of HIPAA constitute negligence per se.

121. Plaintiffs and Class Members are within the category of persons HIPAA was intended to protect.

122. The harm that occurred as a result of the Data Breach is the type of harm HIPAA was intended to guard against.

123. Plaintiffs' and Class Members' PII and PHI constitute personal property that was stolen due to Aesto's negligence, resulting in harm, injury and damages to Plaintiffs and Class Members.

124. Aesto's conduct in violation of applicable laws directly and proximately caused the unauthorized access and disclosure of Plaintiffs' and Class Members' unencrypted PII and PHI, and Plaintiffs and Class Members have suffered and will continue to suffer damages as a result of

Aesto's conduct. Plaintiffs and Class Members seek damages and other relief as a result of Aesto's negligence.

**COUNT III**
**BREACH OF IMPLIED CONTRACT**
**(on behalf of Plaintiffs and the Class)**

125. Plaintiffs re-allege and incorporate by reference herein all the allegations contained in the preceding paragraphs.

126. When Plaintiffs and Class Members provided their PII and PHI to Aesto, they entered into implied contracts with Aesto, under which Aesto agreed to take reasonable steps to protect Plaintiffs' and Class Members' PII and PHI, comply with its statutory and common law duties to protect Plaintiffs' and Class Members' PII and PHI, and to timely notify them in the event of a data breach.

127. Aesto solicited and invited healthcare providers and Plaintiffs and Class Members to provide their PII and PHI as part of Aesto's provision of healthcare data management services and related services. Plaintiffs and Class Members accepted Aesto's offers and provided their PII and PHI to Aesto.

128. When entering into implied contracts, Plaintiffs and Class Members reasonably believed and expected that Aesto's data security practices complied with its statutory and common law duties to adequately protect Plaintiffs' and Class Members' PII and PHI and to timely notify them in the event of a data breach.

129. Aesto's implied promise to safeguard PII and PHI is evidenced by, *e.g.*, the representations in Aesto's privacy policy set forth above.

130. Plaintiffs and Class Members would not have entrusted their PII and PHI to Aesto had they known that Aesto would not safeguard their PII and PHI, as promised, or provide timely notice of a data breach.

131. Plaintiffs and Class Members fully and adequately performed their obligations under their implied contracts with Aesto.

132. Aesto breached its implied contracts with Plaintiffs and Class Members by failing to safeguard Plaintiffs' and Class Members' PII and PHI, and by failing to provide them with timely and accurate notice of the Data Breach.

133. The losses and damages Plaintiffs and Class Members sustained include, but are not limited to:

a. Theft of their PII and PHI;

b. Costs associated with purchasing credit monitoring and identity theft protection services;

c. Costs associated with the detection and prevention of identity theft and unauthorized use of their PII and PHI;

d. Lowered credit scores resulting from credit inquiries following fraudulent activities;

e. Costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach – including finding fraudulent charges, cancelling, and reissuing cards, enrolling in credit monitoring and identity theft protection services, freezing and unfreezing accounts, and imposing withdrawal and purchase limits on compromised accounts;

f. The imminent and certainly impending injury flowing from the increased risk of potential fraud and identity theft posed by their PII and PHI being placed in the hands of criminals;

g. Damages to and diminution in value of their PII and PHI entrusted, directly or indirectly, to Aesto with the mutual understanding that Aesto would safeguard Plaintiffs' and Class Members' data against theft and not allow access and misuse of their data by others;

h. Continued risk of exposure to hackers and thieves of their PII and PHI, which remains in Aesto's possession and is subject to further breaches so long as Aesto fail to undertake appropriate and adequate measures to protect Plaintiffs' and Class Members' data; and

i. Emotional distress from the unauthorized disclosure of PII and PHI to strangers who likely have nefarious intentions and now have prime opportunities to commit identity theft, fraud, and other types of attacks on Plaintiffs and Class Members.

134. As a direct and proximate result of Aesto's breach of contract, Plaintiffs and Class Members are entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

135. Plaintiffs and Class Members are also entitled to injunctive relief requiring Aesto to, e.g., (a) strengthen its data security systems and monitoring procedures; (b) submit to annual audits of those systems and monitoring procedures; and (c) immediately provide adequate long-term credit monitoring to all Class Members.

**COUNT IV**
**UNJUST ENRICHMENT**
**(on behalf of Plaintiffs and the Class)**

136. Plaintiffs re-allege and incorporate by reference herein all the allegations contained in the preceding paragraphs.

137. This count is plead in the alternative to Count III, breach of implied contract.

138. Plaintiffs and Class Members have an interest, both equitable and legal, in their PHI and PII that was conferred upon, collected by, and maintained by Aesto and that was stolen in the Data Breach.

139. Aesto benefitted from the conferral upon it of Plaintiffs' and Class Members' PII and PHI, and by its ability to retain and use that information. Aesto understood that it so benefitted.

140. Aesto also understood and appreciated that Plaintiffs' and Class Members' PHI and PII was private and confidential and that its value depended upon Aesto maintaining its privacy and confidentiality.

141. But for Aesto's willingness and commitment to maintain its privacy and confidentiality, that PHI and PII would not have been transferred to and entrusted with Aesto. Further, if Aesto had disclosed that its data security measures were inadequate, Aesto would not have been permitted to continue in operation by regulators and the healthcare marketplace.

142. As a result of Aesto's wrongful conduct as alleged in this Complaint (including, among other things, its failure to employ adequate data security measures, its continued maintenance and use of Plaintiffs' and Class Members' PII and PHI without having adequate data security measures, and its other conduct facilitating the theft of that PII and PHI), Aesto have been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and Class Members.

143. Aesto's unjust enrichment is traceable to, and resulted directly and proximately

from, the conduct alleged herein, including the compilation and use of Plaintiffs' and Class Members' sensitive PHI and PII, while at the same time failing to maintain that information secure from intrusion and theft by hackers.

144. In particular, Aesto enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiffs' and Class Members' PII and PHI. Instead of providing a reasonable level of security that would have prevented the Data Breach, Aesto chose to maximize its profits at the expense of Plaintiffs and Class Members by utilizing cheaper, ineffective security measures. Plaintiffs and Class Members, on the other hand, suffered as a direct and proximate result of Aesto's decision.

145. Under the principles of equity and good conscience, Aesto should not be permitted to retain funds rightfully belonging to Plaintiffs and Class Members, because Aesto failed to implement appropriate data management and security measures that are mandated by industry standards.

146. Plaintiffs and Class Members have no adequate remedy at law.

147. As a direct and proximate result of Aesto's conduct, Plaintiffs and Class Members have suffered and will suffer injury, including but not limited to:

a. actual identity theft;

b. the loss of the opportunity of how their PII and PHI is used;

c. the compromise, publication, and/or theft of their PII and PHI;

d. out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their PII and PHI;

e. lost opportunity costs associated with efforts expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the

Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft;

f. the continued risk to their PII and PHI, which remains in Aesto's possession and is subject to further unauthorized disclosures so long as Aesto fails to undertake appropriate and adequate measures to protect PII and PHI in their continued possession; and

g. future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII and PHI compromised as a result of the Data Breach for the remainder of the lives of Plaintiffs and Class Members.

148. As a direct and proximate result of Aesto's conduct, Plaintiffs and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

149. Aesto should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiffs and Class Members, proceeds that it unjustly received from them. In the alternative, Aesto should be compelled to refund the amounts that Plaintiffs and Class Members overpaid for Aesto's services.

**PRAYER FOR RELIEF**

WHEREFORE Plaintiffs, individually and on behalf of all others similarly situated, prays for the following relief:

a. An Order certifying the Class as defined herein, and appointing Plaintiffs and their counsel to represent the Class;

b. A judgment declaring that Aesto's conduct violated its common-law and equitable duties, and breached implied contract and fiduciary duty;

c. Injunctive and equitable relief:

i. enjoining Aesto from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiffs' and Class Members' PII and PHI, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiffs and Class Members;

ii. compelling Aesto to use appropriate cybersecurity methods and policies with respect to PII and PHI collection, storage, and protection, and to disclose with specificity to Class Members the types of PII and PHI compromised;

iii. any injunctive or equitable relief that the Court deems just and proper;

d. An award of damages, including actual, nominal, consequential, enhanced compensatory, and punitive damages, as allowed by law in an amount to be determined;

e. for an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

f. for prejudgment interest on all amounts awarded; and

g. such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted this 2nd day of September, 2026.

*/s/ Matthew J. Ford*
Matthew J. Ford
BAILEY & GLASSER, LLP
3000 Riverchase Galleria, Suite 905
Birmingham, AL 35244
T: (205) 988-9253
F: (205) 733-4896
E: mford@baileyglasser.com

Bart D. Cohen (*pro hac vice* forthcoming)
Panida A. Anderson (*pro hac vice* forthcoming)
BAILEY & GLASSER, LLP
1055 Thomas Jefferson St., Suite 540
Washington, DC 20007

T: (202) 463-2101
F: (202) 463-2103
E: bglasser@baileyglasser.com
emcgraw@baileyglasser.com

David D. Bibiyan (*pro hac vice* forthcoming)
Younjin (Jennifer) Lee (*pro hac vice* forthcoming)
BIBIYAN LAW GROUP, P.C.
1460 Wilshire Boulevard
Los Angeles, CA 90024
T: (310) 438-5555
E: david@tomorrowlaw.com
jlee@tomorrowlaw.com

**DEFENDANT TO BE SERVED VIA PROCESS SERVER AS FOLLOWS:**

AESTO, LLC d/b/a AESTO HEALTH
c/o CAPITOL CORPORATE SERVICES INC
2 North Jackson Street Ste 605
Montgomery, AL 36104